# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

ORIGINAL

United States of America,

        Plaintiff,

v.

D-7,   Caleb Young,

        Defendant.

No. 18-20128

Hon. Stephen J. Murphy

**Offenses:**
Count 1: 18 U.S.C. § 2252A(g)

**Maximum Penalties:**
Minimum of 20 years in prison
Maximum of Life in prison

**Supervised Release:**
Minimum 5 years
Maximum Life

**Maximum Fines:**
$250,000

---

## Rule 11 Plea Agreement

---

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, defendant Caleb Young and the government agree as follows:

ORIGINAL

## 1.   Guilty Plea

### A.   Count of Conviction

Defendant will enter a plea of guilty to Count 1 of the Indictment, which charges: child exploitation enterprise, in violation of 18 U.S.C. § 2252A(g).

### B.   Elements of Offense

The elements of Count 1—child exploitation enterprise—are:

1. The Defendant violated provisions of Chapter 110 and Chapter 117 of the United States Code, including production of child pornography and coercion and enticement of a minor;

2. The violations were part of a series of felony violations constituting three or more separate incidents;

3. The series of violations involved more than one victim;

4. The Defendant committed the violations in concert with at least three other individuals.

## C.   Factual Basis for Guilty Plea

*The following facts are a sufficient and accurate basis for defendant's guilty plea:*

From at least January of 2012 to October 2017, the Defendant was a part of a group of individuals that worked together, using the internet, with the goal and common objective of enticing minor females to produce child pornography via web camera on a chatroom-based website (referred to as "Website A" for purposes of this plea agreement).   The group pretended to be teenage boys or girls, used fake monikers to identify themselves, targeted victims on various social media platforms, recruited the victims to chatrooms on Website A, worked together to pressure victims to engage in masturbation in the chatrooms, recorded that activity, and shared recordings with each other.

There were more than ten core members of the group, including Defendant Caleb Young.   During the Defendant's membership in the group, there were never less than ten group members working in concert to accomplish the group's common objective.

To communicate with one another and to track the minor females the group targeted, the group maintained a spreadsheet on a website that any group member could edit. This spreadsheet provided information about the girls targeted by the group, the level of activity in particular chatrooms on Website A, and the group's so-called "hunt strategy." The hunt strategy set forth the best techniques for luring girls into the chatrooms on Website A. Importantly, this website with the spreadsheet contained a chat function that allowed group members to discuss, in real time, their activities on Website A. During these group chats, Defendant and the other group members organized and strategized about victims to target, methods to use to convince the victims to engage in sexual activity, and general group membership issues. The group also used their group chats to share recordings of child pornography produced through their scheme, and to celebrate their successes in convincing minor females to engage in sexual activity on camera in these chatrooms. When the hosting service that supported the spreadsheet website changed its format, the group moved onto another social media platform—Discord—to continue to organize and strategize together.

Each group member had at least one role, although at times a group member would play more than one role or switch from one role to another. For example, the group had "hunters," "talkers," and "loopers." The "hunters" visited social media websites commonly used by the minor victims to interact with the minors. They were in charge of convincing the girls to log-on to Website A. They provided the girls with links to specific chatrooms that they or another group member would create on Website A. Once the minors logged-on to Website A, the "talkers" took over the primary job of conversing with them. They asked the minors to do "dares" which escalated into sexual activity. If a minor became suspicious of the members in a chatroom or was reluctant to engage in sexual activity, then the "loopers" would play a previously recorded video of a minor actively chatting and performing sexually explicit conduct in a chatroom. The "looper" pretended to be the minor in the video. The "looper" played the video or "loop" of a minor engaged in sexual activity in order to entice the minor in the chatroom to engage in the same sexually explicit activity.

The Defendant and the other group members would record the girls they enticed to come to Website A to engage in the lascivious display of the genitals, masturbation, and other sexual acts.  The Defendant was primarily a "talker" for the group, although he occasionally hunted for victims as well.  Young used the name **JOHNB** on Website A.

The Defendant helped convince numerous minor female victims to produce child pornography on Website A.  He recorded numerous different minor female victims producing child pornography on Website A. Specifically, the Defendant conspired with other group members in order to entice MV-1, MV-2, MV-3, and MV-6, among others, to produce child pornography during the course of the child exploitation enterprise.

MV-1, a child born in 2000 who resided in the Eastern District of Michigan during the scope of her exploitation, was directed and encouraged to engage in masturbation and the lascivious display of the genitals on web camera by Defendant and his co-defendants on numerous occasions.  For example, at the group members' direction, MV-1 masturbated, live streaming on web camera, on June 28, 2015 and on

October 9, 2015, and some group members recorded that activity. MV-1 was 14 years old on June 28 and was 15 on October 9.

MV-2, a child born in 2001 who resided in Canada during the scope of her exploitation, was directed and encouraged to engage in masturbation on web camera in Website A chatrooms by Defendant and his co-defendants on numerous occasions. MV-2 was frequently exploited by the group. The group recorded over 60 videos of MV-2 engaged in masturbation and/or the lascivious display of the genitals. For example, at the group members' direction, on December 31, 2015 and February 7, 2016, MV-2 masturbated, live streaming on web camera. Defendant personally recorded MV-2 engaged in masturbation and the lascivious display of the genitals. MV-2 was 13 years old when the group first sexually exploited her on Website A. On several occasions when MV-2 was exploited by the group, including on December 31, 2015, one of the group members was targeting her from one or more locations in the Eastern District of Michigan.

MV-6, a child born in 2000 who resided in Oklahoma during the scope of her exploitation, was directed and encouraged to engage in

masturbation and the lascivious display of the genitals on web camera in Website A chatrooms by Defendant and his co-defendants on numerous occasions. For example, on December 14, 2015, December 25, 2015, and December 31, 2015 the Defendant and other group members' directed MV-6 to undress and display her genitals to the web camera. As a result, MV-6 partially undressed, while live streaming via web camera. She also sent an image of herself engaged in the lascivious display of the genitals to one of the group members on at least one of these occasions. And, on January 2, 2016, at the group members' direction, MV-6 engaged in the lascivious display of her genitals, while live streaming on web camera. At least one of the group members' recorded a video of MV-6 engaged in the above-described activity on December 14, December 25, and January 2. MV-6 was 15 years old when the group first sexually exploited her on Website A. On several occasions when MV-6 was exploited by the group, including on December 25, 2015, one of the group members was targeting her from one or more locations in the Eastern District of Michigan.

Beyond the specific victims mentioned above, Defendant acknowledges participating in the sexual exploitation, or attempted

sexual exploitation, of dozens of other minor females in chatrooms on Website A. Defendant participated in this group from its inception in 2012, through the date of the execution of a search warrant at his residence, October 31, 2017. Defendant frequently engaged in this activity throughout the child exploitation enterprise. For example, in March 2017 alone, Defendant logged into chatrooms on Website A over 800 times.

## 2. Sentencing Guideline Range

### A. Standard of Proof

The Court will find sentencing factors by a preponderance of the evidence.

### B. Agreed Guideline Range

There are no sentencing guideline disputes. Except as provided below, the parties recommend that Defendant's guideline range is **life imprisonment**, as set forth on the attached worksheets. The mandatory

minimum sentence for the offense is **20 years or 240 months' imprisonment**.

If the Court finds:

a) that Defendant's criminal history category is higher than reflected on the attached worksheets, or

b) that the offense level should be higher because, after pleading guilty, Defendant made any false statement to or withheld information from his probation officer; otherwise demonstrated a lack of acceptance of responsibility for his offense(s); or obstructed justice or committed any crime,

and if any such finding results in a higher offense gravity score than calculated by the parties in the attached worksheets, the higher offense gravity score becomes the range recommended by the Defendant and the Government. The Court is not bound by this recommendation concerning the guideline range, and Defendant understands that he will have no right to withdraw his guilty plea if the Court does not follow the

Page **10** of **21**

recommendation.  If however, the Court finds that Defendant is a career offender or an armed career criminal, as defined under the sentencing guidelines or other federal law, and that finding is not already reflected in the attached worksheets, this paragraph does *not* authorize a corresponding increase in the agreed range.

Neither party may take a position concerning the applicable guidelines that is different than any position of that party as reflected in the attached worksheets, except as necessary to the Court's determination regarding subsections 1) and 2), above.

### C.    Relevant Conduct

The Defendant and other group members coerced and enticed dozens of minor victims between the dates of January 1, 2012, and October 23, 2017.  The Defendant, in concert with others, recorded these victims producing child pornography after directing them to do so.  And, he and other group members strategized about how to get numerous other minor victims, some of whom did not ultimately produce child pornography, to engage in sexually explicit conduct on Website A.  The

Defendant, in concert with others, lied about his age and identity in order to convince the minor victims to engage in sexual activity.

### 3.    Sentence

The Court will impose a sentence pursuant to 18 U.S.C. § 3553, and in doing so must consider the sentencing guideline range.

### A.    Imprisonment

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the Government makes a non-binding recommendation that the sentence of imprisonment be no more than the sentencing guideline range determined by paragraph 2B. The Court **must** impose a sentence of imprisonment on Count One of at least twenty (20) years.

### B.    Supervised Release

A term of supervised release follows the term of imprisonment. There is no agreement as to the term of supervised release. But the Court must impose a term of supervised release on Count One of no less than five years. The agreement concerning imprisonment described above in Paragraph 3A does not apply to any term of imprisonment that results from any later revocation of supervised release.

## C.    Special Assessment

Pursuant to the Justice for Victims of Trafficking Act of 2015, Defendant will pay a special assessment of **$5,000.00**. *See* 18 U.S.C. § 3014.

## D.    Fines

There is no agreement as to fines.

## E.    Restitution

The Court shall order restitution to every identifiable victim of Defendant's offense.  *See* 18 U.S.C. § 2259.  Defendant agrees to pay restitution in the amount of $5,000 to any identified victim associated with his conduct on Website A and/or his membership in the above-described group from January of 2012 through October 23, 2017.  The term "identified victim" means a victim whose identity is able to be discovered or confirmed through diligent investigation by the time of sentencing.  Any identified victim still maintains a right to request a

larger amount of restitution from the Court, but Defendant agrees to pay a minimum of $5,000 per identified victim.

**4.    SORNA/Adam Walsh Act**

The Defendant understands that, by pleading guilty in this case, he will be required to register as a sex offender. The Court, as a condition of supervised release or probation, must order the defendant to comply with all sex offender registration requirements under the Sex Offender Registration and Notification Act and that, if applicable, Defendant must register and keep registration current and accurate in each of the following jurisdictions: the location of residence; the location of employment; and location of any school that defendant is attending. The Defendant understands that such information must be updated not later than three business days after any change. A failure to comply with these and other obligations may subject the defendant to prosecution under federal or state law.

## 5.    Forfeiture

As part of this agreement, pursuant to 18 U.S.C. § 2253(a)(3) and/or 18 U.S.C. § 2428, Defendant agrees to forfeit his interest in the following property:

1. Any visual depiction described in Title 18, United States Code, Sections 2251, 2251A, or 2252, 2252A, 2252B, or 2260, or any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction, which was produced, transported, mailed, shipped, or received in violation of these subsections;

2. His interest in, if any property, real or personal, constituting or traceable to gross profits or other proceeds obtained as a result of violations of Title 18, United States Code, Sections 2252A(a)(2) and/or 2422(b); and

3. His interest in, if any property, real or personal, involved in the commission of violations of Title 18, United States Code, Sections 2252A(a)(2) and/or 2422(b).

In entering into this agreement with respect to forfeiture, Defendant expressly waives his right to have a jury determine the forfeitability of his interest in the above-described property as provided by Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure.

In entering into this agreement with respect to forfeiture, Defendant knowingly, voluntarily, and intelligently waives any challenge to the

above-described forfeiture based upon the Excessive Fines Clause of the Eighth Amendment to the United States Constitution.

Defendant further waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant acknowledges that he understands that the forfeiture of the above-described assets is part of the sentence that may be imposed in this case and waives any failure by the court to advise him of this, pursuant to Rule 11(b)(1)(J), at the time his guilty plea is accepted.

## 6.   Use of Withdrawn Guilty Plea

If the Court allows the defendant to withdraw his guilty plea for a "fair and just reason" pursuant to Fed. R. Crim. P. 11(d)(2)(B), defendant waives his rights under Fed. R. Evid. 410, and the government may use his guilty plea, any statement made under oath at the change-of-plea hearing, and the factual basis statement in this plea agreement, against him in any proceeding.

7. **Other Charges**

If the Court accepts this agreement, the government will dismiss any remaining charges in this case against this defendant.

8. **Each Party's Right to Withdraw from This Agreement**

The recommendations in Part 3 are not binding on the Court. Defendant has no right to withdraw his guilty plea and the parties have no right to withdraw from this agreement if the Court decides not to follow them.

9. **Appeal Waiver**

Defendant waives any right he may have to appeal his conviction. If the sentence imposed does not exceed the maximum recommendation allowed by Part 3 of this agreement, Defendant also waives any right he may have to appeal his sentence.  If the sentence imposed is within the guideline range determined by Paragraph 2B the Government agrees not to appeal the sentence, but retains its right to appeal any sentence below that range.  Nothing in this waiver shall be construed to bar a claim of ineffective assistance of counsel, provided that the defendant properly raises such claim by collateral review under 28 U.S.C. § 2255.

## 10. Consequences of Withdrawal of Guilty Plea or Vacation of Conviction

If defendant is allowed to withdraw his guilty plea or if any conviction entered pursuant to this agreement is vacated, the Court shall, on the government's request, reinstate any charges that were dismissed as part of this agreement. If additional charges are filed against defendant within six months after the date the order vacating defendant's conviction or allowing him to withdraw his guilty plea becomes final, which charges relate directly or indirectly to the conduct underlying the guilty plea or to any conduct reflected in the attached worksheets, defendant waives his right to challenge the additional charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

## 11. Parties to Plea Agreement

Unless otherwise indicated, this agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

**12.    Scope of Plea Agreement**

This agreement, which includes all documents that it explicitly incorporates, is the complete agreement between the parties. This agreement supersedes all other promises, representations, understandings and agreements between the parties concerning the subject matter of this plea agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by the government to defendant or to the attorney for the defendant at any time before defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this agreement.

Notwithstanding the previous paragraph, if defendant has entered into a proffer agreement in writing or a cooperation agreement in writing with the government, this plea agreement does not supersede or abrogate the terms of any such prior written agreement.

This agreement also does not prevent any civil or administrative actions against defendant, or any forfeiture claim against any property, by the United States or any other party.

[this part intentionally left blank]

**13.    Acceptance of Agreement by Defendant**

This plea offer expires unless it has been received, fully signed, in

the Office of the United States Attorney by **5:00 p.m.** on **March 15, 2018**.

The government reserves the right to modify or revoke this offer at any

time before defendant pleads guilty.

Matthew Schneider
United States Attorney


Matthew Roth                              Kevin M. Mulcahy
Chief, General Crimes Unit                April N. Russo
                                          Assistant United States Attorneys

Date: March 1, 2018

By signing below, defendant acknowledges that he has read (or been read)
this entire document, understands it, and agrees to its terms. He also
acknowledges that he is satisfied with his attorney's advice and
representation. Defendant agrees that he has had a full and complete
opportunity to confer with his lawyer, and has had all of his questions
answered by his lawyer.


Andrew Stacer,                            Caleb Young
Attorney for Caleb Young                  Defendant


Date: 5/11/18